## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX SPORTS/ REDLINE/BANG
ENERGY, a Florida corporation,

    Plaintiff,

v.

CHRISTOPHER ALFIERI, an individual,
ADAM PERRY, an individual, ANDREW
LaROCCA, an individual, AMY MAROS, an
individual and ELEGANCE BRANDS, INC.,
a Delaware corporation,

    Defendants.
_____/

## **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

       Plaintiff, VITAL PHARMACEUTICALS, INC., d/b/a VPX and as Redline and as Bang Energy, a Florida corporation (hereinafter "VPX"), brings this action against Defendants, CHRISTOPHER ALFIERI, an individual ("Alfieri"), ADAM PERRY, an individual ("Perry"), ANDREW LaROCCA, an individual ("LaRocca"), AMY MAROS, an individual ("Maros")  and ELEGANCE BRANDS, INC., a Delaware corporation ("Elegance"), and states:

## **NATURE OF ACTION**

    1.    This is an action for preliminary and permanent injunctive relief, as well as damages, against each of the Defendants.  Plaintiff VPX seeks relief against: (i) Defendants Alfieri, Perry, LaRocca and Maros (hereinafter sometimes collectively referred to as "Individual Defendants"), as former VPX employees who are in violation of their respective non-compete covenants with VPX, (ii) Defendant Alfieri for also violating his employee non-solicitation covenant with VPX, (iii) Defendant Elegance, as employer of the Individual Defendants, for

1

tortiously interfering with the Individual Defendants' non-compete covenants and Alfieri's employee non-solicitation covenant, and (iv) Alfieri for also tortiously interfering with Perry's, LaRocca's and Maros' respective non-compete covenants with VPX.

## PARTIES, JURISDICTION AND VENUE

2. VPX is a Florida corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Broward County, Florida.

3. Elegance is a Delaware corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Los Angeles County, California.

4. Upon information and belief, Elegance conducts business in the State of Florida, including this judicial district, by therein: (i) promoting, offering for sale or selling energy drinks and other products to distributors, resellers, consumers or other actual or potential customers, (ii) soliciting or establishing product distributorships and/or (iii) soliciting or receiving operating capital from investors.

5. Alfieri is a citizen and resident of Cobb County, Georgia, a former employee of VPX, and a current employee of Elegance.

6. Perry is a citizen and resident of Wake County, North Carolina, a former employee of VPX, and a current employee of Elegance.

7. LaRocca is a citizen and resident of Cobb County, Georgia, a former employee of VPX, and a current employee of Elegance.

8. Maros is a citizen and resident of Ben Hill County, Georgia, a former employee of VPX, and a current employee of Elegance.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because VPX, on one side, and each of the Defendants, on the other side, are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. This Court has personal jurisdiction over each of the Individual Defendants for one of more of the following reasons:

a. Each of the Individual Defendants agreed within the contracts that are the subject of this action that the exclusive forum and venue for litigating disputes arising thereunder are courts located in Broward County, Florida, which includes this Court. Further, because the subject contracts are expressly governed by Florida law and expressly designate courts located in Broward County, Florida as the exclusive forum and venue for litigating disputes arising thereunder, it was foreseeable that Individual Defendants' actions alleged herein would be litigated in Broward County, Florida, including in this Court;

b. This action against each of the Individual Defendants arises from each such defendant breaching a contract in the State of Florida by failing to perform acts required by the contract to be performed in the State of Florida, within the meaning of §48.193(1)(a)(7), Florida Statutes;

c. This action against Alfieri arises out of Alfieri committing tortious acts against VPX within the State of Florida, including tortious interference with VPX's contracts (which expressly designate courts located in Broward County, Florida as the exclusive forum and venue for litigating disputes arising thereunder) as alleged herein, within the meaning of §48.193(1)(a)(2), Florida Statutes; and/or

d. Each of the Individual Defendants engages in substantial and not isolated activity within the State of Florida, within the meaning of § 48.193(2), Florida Statutes.

11. This Court has personal jurisdiction over Defendant Elegance for one or more of the following reasons:

a. This action against Elegance arises out of Elegance committing tortious acts against VPX within the State of Florida, including tortious interference with VPX's contracts (which expressly designate courts located in Broward County, Florida as the exclusive forum and venue for litigating disputes arising thereunder) as alleged herein, within the meaning of §48.193(1)(a)(2), Florida Statutes. Further, because the subject contracts are expressly governed by Florida law and expressly designate courts located in Broward County, Florida as the exclusive forum and venue for litigating disputes arising thereunder, it was foreseeable that Elegance's actions alleged herein would be litigated in Broward County, Florida, including in this Court;

b. This action against Elegance arises out of Elegance causing injury to VPX within the State of Florida arising out of one or more acts by Elegance outside of the State of Florida, including tortious interference with VPX's contracts (which expressly designate courts located in Broward County, Florida as the exclusive forum and venue for litigating disputes arising thereunder) as alleged herein, and at or about the time of such injury, Elegance was engaged in solicitation or service activities within the State of Florida, within the meaning of §48.193(1)(a)(6)(a), Florida Statutes;

c. This action against Elegance arises out of Elegance operating, conducting, engaging in, or carrying on a business venture in the State of Florida, within the meaning of §48.193(1)(a)(1), Florida Statutes; and/or

d. Elegance is engaged in substantial and not isolated activity within the State of Florida, within the meaning of §48.193(2), Florida Statutes.

12. The above-referenced contracts that are the subject of this action, into which each of the Individual Defendants entered with VPX, are attached hereto, and incorporated by reference herein, as **Exhibit 1-A** (the "Alfieri Restrictive Covenants Agreement"), **Exhibit 1-B** (the "Perry Restrictive Covenants Agreement"), **Exhibit 1-C** (the "LaRocca Restrictive Covenants Agreement") and **Exhibit 1-D** (the "Maros Restrictive Covenants Agreement"). The above-referenced provision designating courts located in Broward County, Florida as the exclusive forum and venue for litigating disputes arising under each of the subject contracts is set forth within paragraph 16 thereof.

13. Venue is proper in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, alternatively, under: (i) 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim asserted herein occurred in this district and/or (ii) the provisions within each of the aforesaid contracts that are the subject of this action designation Broward County, Florida as the exclusive forum and venue for litigating disputes arising thereunder.

## GENERAL ALLEGATIONS

14. Since its founding in the 1990s, VPX has manufactured and sold products in the sports nutrition, dietary supplement and beverage industries.

15. Over the course of the past several years, VPX, through intensive product development and promotional efforts, has created, and carved out a substantial market presence with, its aforesaid products, including its well-known BANG® energy drink products.

16. Companies such as Red Bull, Rock Star and Monster Energy are competitors of VPX.

### Individual Defendants' Employment with VPX and Termination Thereof

17. On July 30, 2019, VPX hired Alfieri as its Vice-President of Sales and Distribution.

18. In connection therewith, Alfieri entered into the Alfieri Restrictive Covenants Agreement with VPX, bearing (among other provisions) a non-compete covenant as well as an employee non-solicitation covenant, each within paragraph 6 thereof. *See* **Exhibit 1-A**.

19. While employed by VPX, Alfieri reported directly to VPX's Executive Vice President of Sales and worked closely with VPX's Chief Executive Officer.

20. While employed by VPX, Alfieri was required to, and did, spend a substantial amount of time physically located in the State of Florida, particularly VPX's base facility in Broward County, Florida.

21. While employed by VPX, VPX entrusted Alfieri with access to VPX's proprietary and confidential business information and trade secrets.

22. Alfieri's employment with VPX terminated as of March 27, 2020.

23. On August 15, 2019, VPX hired Perry as its Director of Sales and Distribution.

24. In connection therewith, Perry entered into the Perry Restrictive Covenants Agreement with VPX, bearing (among other provisions) a non-compete covenant within paragraph 6 thereof. *See* **Exhibit 1-B**.

25. While employed by VPX, Perry directly reported to Alfieri and worked closely with VPX's Executive Vice-President of Sales.

26. While employed by VPX, Perry was required to, and did, spend a substantial amount of time physically located in the State of Florida, particularly VPX's base facility in Broward County, Florida.

27. While employed by VPX, VPX entrusted Perry with access to VPX's proprietary and confidential business information and trade secrets.

28. On April 21, 2020, Perry resigned and his employment with VPX terminated on

May 1, 2020.

29. On October 30, 2019, VPX hired LaRocca as its Director of Distribution Strategy.

30. In connection therewith, LaRocca entered into the LaRocca Restrictive Covenants Agreement with VPX, bearing (among other provisions) a non-compete covenant within paragraph 6 thereof.  See **Exhibit 1-C**.

31. While employed by VPX, LaRocca, like Perry, directly reported to Alfieri and worked closely with VPX's Executive Vice-President of Sales.

32. While employed by VPX, LaRocca was required to, and did, spend a substantial amount of time physically located in the State of Florida, particularly VPX's base facility in Broward County, Florida.

33. While employed by VPX, VPX entrusted LaRocca with access to VPX's proprietary and confidential business information and trade secrets.

34. On April 21, 2020, LaRocca resigned and his employment with VPX terminated on May 15, 2020. LaRocca's resignation letter, dated the same day as Perry's, explained that the reason for his departure from VPX was due to him being presented with a "strategic career move." Attached hereto as **Exhibit 3** is a copy of LaRocca's resignation letter to VPX.

35. On October 23, 2019, VPX hired Maros as its Senior Supply Chain Manager.

36. In connection therewith, Maros entered into the Maros Restrictive Covenants Agreement with VPX bearing (among other provisions) a non-compete covenant within paragraph 6 thereof.  See **Exhibit 1-D**.

37. While employed by VPX, Maros reported directly to VPX's Senior Director of Operations and worked closely with VPX's Executive Vice-President of Sales.

38. While employed by VPX, Maros was required to, and did, spend most, if not all, of

her time physically located in the State of Florida, particularly VPX's base facility in Broward County, Florida.

39. While employed by VPX, VPX entrusted Maros with access to VPX's proprietary and confidential business information and trade secrets.

40. On May 26, 2020, Maros resigned and her employment with VPX terminated on June 17, 2020.

### Competing Company Elegance and Its Hiring of Individual Defendants

41. Elegance is a relatively new company that has publicly announced its launch, or imminent launch, of an energy drink product branded "Gorilla Hemp Energy Drink," which Elegance's own website acknowledges competes (or will imminently compete) against the energy drink products sold by Red Bull, Rock Star and Monster Energy. By extension, Elegance, via its own website, acknowledges that "Gorilla Hemp Energy Drink" competes (or will imminently compete) against VPX's BANG® energy drink products. Attached hereto as **Exhibit 2-A** is a copy of Elegance's "Invest Now" webpage (https://investinelegance.com/#brands) (last visited June 29, 2020; accessible either directly or via link from Elegance's homepage (https://elegance-brands.com)), identifying "Gorilla Hemp Energy Drink" as a feature Elegance product.

42. Recently, it came to VPX's attention that Elegance hired: (i) Alfieri as its Chief Revenue Officer, (ii) Perry as its Vice-President of Sales and Distribution, and (iii) LaRocca as its Vice-President of Distribution Strategy. *See* **Exhibit 2-A**.

43. It further recently came to VPX's attention that Elegance also hired Maros as its Vice-President of Operations, according to a webpage that VPX previously found through Elegance's website. Attached hereto as **Exhibit 2-B** is a copy of the webpage reflecting Elegance's hiring of Maros as its Vice-President of Operations.

44. Any and all conditions precedent to VPX bringing and maintaining this action have occurred, or have been met, excused, discharged, or waived.

## **COUNT I – BREACH OF NON-COMPETE COVENANTS**
## **AGAINST INDIVIDUAL DEFENDANTS ALFIERI, PERRY, LaROCCA AND MAROS**

45. Plaintiff reincorporates and realleges the allegations in paragraphs 1-44 hereinabove, as if set forth fully within this Count.

46. This action is for preliminary and permanent injunctive relief, as well as damages, against each and all of the Individual Defendants Alfieri, Perry, LaRocca and Maros.

47. Each of the aforesaid Individual Defendants entered into his/her own agreement with Plaintiff that contained restrictive covenants protective of VPX's legitimate business interests. *See* **Exhibits 1-A**, **Exhibit 1-B**, **Exbibit 1-C** and **Exhibit 1-D**.

48. Each of the Individual Defendants therein agreed with VPX to be bound by the terms of a non-compete covenant, which was and is reasonably drawn to protect VPX's legitimate business interests, including, but not limited to, protection of VPX's proprietary and confidential business information, trade secrets and goodwill. The non-compete covenant, which is set forth within each Individual Defendant's agreement with VPX, states:

> 6. Activity Restrictions. Employee understands that the industries in which the Company does business (in particular, the dietary and nutritional supplement industry and/or non-alcoholic beverage industry) are extremely competitive in every way, from the product formulae, to manufacturing, marketing and distribution, and regarding the development and protection of Intellectual Property. Accordingly, to ensure the production of, among other things, the Company's Confidential Information, Intellectual Property, and trade secrets, and the Company's interest in maintaining customer relationships, other business relationships, and a stable workforce, Employee agrees as follows:
>
> A. During the term of the Employee's employment with the Company, and for a period of one (1) year from the Employee's termination or cessation date with the Company, Employee will not directly or indirectly engage in or affiliate with a Competing

9

>   Company in any capacity where Employee's duties and responsibilities are similar or related to any of the duties and responsibilities Employee held at any time during his or her employment with the Company or in which Employee's use of the Company's Confidential Information would be useful to the competitor and/or detrimental to the Company, its owners, directors, officers, employees, contractors, sub-contractors and/or customers ("Competing Company" for this paragraph 6 and its subparts shall mean any person, company or other entity working or otherwise engaged in any aspect of the (i) nutritional and dietary supplement industry; (ii) non-alcoholic beverage industry, and/or (iii) sports nutrition industry that competes, in any way, with the Company or that may compete with the Company based upon any of the Company's and/or the Competing Company's plans for future business endeavors);
>
>   \*\*\*

*See* **Exhibits 1-A (¶6(A)), Exhibit 1-B (¶6(A)), Exbibit 1-C (¶6(A)) and Exhibit 1-D (¶6(A)) (hereinafter the "Non-Compete Covenants")**.

49. As reflected within its website, Elegance is a "Competing Company" of VPX as defined within each of the Non-Compete Covenants quoted hereinabove. *See* **Exhibit 2-A**.

50. As reflected within its website, Elegance has hired Alfieri, and has done so within the one (1) year restriction period set forth within his Non-Compete Covenant, which period remains in effect. *See* **Exhibit 2-A**.

51. In having accepted employment and/or affiliation with Elegance within the one (1) year period of restriction, Alfieri is in breach of his Non-Compete Covenant with VPX.

52. As reflected within its website, Elegance has hired Perry, and has done so within the one (1) year restriction period set forth within his Non-Compete Covenant, which period remains in effect. *See* **Exhibit 2-A**.

53. In having accepted employment and/or affiliation with Elegance within the one (1) year period of restriction, Perry is in breach of his Non-Compete Covenant with VPX.

54. As reflected within its website, Elegance has hired LaRocca, and has done so within

10

the one (1) year restriction period set forth within his Non-Compete Covenant, which period remains in effect. *See* **Exhibit 2-A**.

55. In having accepted employment and/or affiliation with Elegance within the one (1) year period of restriction, LaRocca is in breach of his Non-Compete Covenant with VPX.

56. As reflected within its website, Elegance has hired Maros, and has done so within the one (1) year restriction period set forth within her Non-Compete Covenant, which period remains in effect. *See* **Exhibit 2-B**.

57. In having accepted employment and/or affiliation with Elegance within the one (1) year period of restriction, Maros is in breach of her Non-Compete Covenant with VPX.

58. Unless the Individual Defendants are enjoined from violating their respective Non-Compete Covenants, including enjoined from working for, or otherwise affiliating with, Elegance or any other Competing Company, VPX will suffer irreparable injury and harm, for which there is no remedy at law that provides VPX adequate relief. Further, each of the subject contracts, into which Individual Defendants respectively entered, expressly provides, at paragraph 7(B)(i) thereof, that VPX shall be entitled to injunctive relief for a breach or threatened breach of the Non-Compete Covenant, as more particularly set forth therein.

59. Additionally, as a result of Individual Defendants' breach of their respective Non-Compete Covenants, VPX has suffered, and will continue to suffer, monetary harm.

## COUNT II – BREACH OF NON-SOLICITATION COVENANT
## AGAINST DEFENDANT ALFIERI

60. Plaintiff reincorporates and re-alleges the allegations in paragraphs 1-44 and 47-57 hereinabove, as if set forth fully within this Count.

61. This action is for preliminary and permanent injunctive relief, as well as damages, against Defendant Alfieri.

62. Alfieri entered into an agreement with Plaintiff that contained restrictive covenants protective of VPX's legitimate business interests. *See* **Exhibits 1-A**.

63. Alfieri therein agreed with VPX to be bound by a covenant restricting him from soliciting any VPX employee to terminate his/her employment with VPX or to become employed by a Competing Company. Alfieri's referenced employee non-solicitation provision states:

> 6. Activity Restrictions. Employee understands that the industries in which the Company does business (in particular, the dietary and nutritional supplement industry and/or non-alcoholic beverage industry) are extremely competitive in every way, from the product formulae, to manufacturing, marketing and distribution, and regarding the development and protection of Intellectual Property. Accordingly, to ensure the production of, among other things, the Company's Confidential Information, Intellectual Property, and trade secrets, and the Company's interest in maintaining customer relationships, other business relationships, and a stable workforce, Employee agrees as follows:
>
> \*\*\*\*
>
> E. During the term of the Employee's employment with the Company, and for a period of one (1) year from Employee's termination or cessation date with the Company, Employee will not directly or indirectly solicit or have discussions or other communication (regardless of who initiates such discussions or communications) with any employee, contractor, and/or consultant or the Company for the purpose of causing that employee to terminate his or her employment with the Company or to become employed by a Competing Company, or to become employed by or otherwise associated with any person or entity in a capacity in which that employee's use of the Company's Confidential Information would be detrimental to the Company, its owners, directors, officers, employees, contractors, sub-contractors and/or customers.

*See* **Exhibit 1A (¶6(E))** **(hereinafter the "Employee Non-Solicitation Covenant")**.

64. Upon information and belief, shortly after his employment with VPX terminated, Alfieri solicited and induced Perry to terminate his employment with VPX to work for Elegance, within the Employee Non-Solicitation Covenant's one (1) year period of restriction.

65. Upon information and belief, shortly after his employment with VPX terminated, Alfieri solicited and induced LaRocca to terminate his employment with VPX to work for Elegance, within the Employee Non-Solicitation Covenant's one (1) year period of restriction.

66. Upon information and belief, Alfieri more recently solicited and induced Maros to terminate her employment with VPX to work for Elegance, within the Employee Non-Solicitation Covenant's one (1) year period of restriction.

67. In soliciting Perry, LaRocca and Maros to terminate their respective employment with VPX, within the one (1) year period of restriction, Defendant Alfieri breached his Employee Non-Solicitation Covenant.

68. Further, as reflected within its website, Elegance is a "Competing Company" of VPX as defined within each of the Employee Non-Solicitation Covenant quoted hereinabove. *See* **Exhibit 2-A**. Thus, in soliciting Perry, LaRocca and Maros to leave VPX to work for Elegance, within the one (1) year period of restriction, Alfieri further breached that covenant.

69. Unless Alfieri is enjoined from continuing to violate his Employee Non-Solicitation Covenant, including enjoined from soliciting Perry, LaRocca, Maros or any other VPX employees, VPX will suffer irreparable injury and harm, for which there is no remedy at law to provide VPX adequate relief. Further, each of the subject contracts, into which Alfieri entered, expressly provides, at paragraph 7(B)(i) thereof, that VPX shall be entitled to injunctive relief for a breach or threatened breach of the Employee Non-Solicitation Covenant, as more particularly set forth therein.

70. Additionally, as a result of Alfieri's breach of his Employee Non-Solicitation Covenant, VPX has suffered, and will continue to suffer, monetary harm.

### COUNT III – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS AGAINST DEFENDANT ELEGANCE

71. Plaintiff reincorporates and re-alleges the allegations in paragraphs 1-44, 47-57 and 62-68 hereinabove, as if set forth fully within this Count.

72. This action is for preliminary and permanent injunctive relief, as well as damages, against Defendant Elegance.

73. At all times material hereto, valid contracts existed between VPX and each of the Individual Defendants.

74. Those contracts provide, in relevant part, "that for a period of one (1) year after the termination or cessation of [the Employee's] employment for any reason, whether voluntary or involuntary, Employee will inform his or her potential or actual future employers of his or her obligations under this Agreement, including paragraphs 3 and 6," respectively, regarding the non-disclosure of confidential information and the Non-Compete Covenants and Non-Solicitation Convents at issue in this action.  Accordingly, upon information and belief, Elegance had knowledge of each of the individual Defendants' agreements containing the Non-Compete Covenants and Employee Non-Solicitation Covenants with VPX prior to hiring each of the Individual Defendants within one (1) year after their termination of employment with VPX, as herein alleged. *See* **Exhibits 1-A (¶10(C))**, **Exhibit 1-B (¶10(C))**, **Exhibit 1-C (¶10(C)) and Exhibit 1-D (¶10(C))**

75. Elegance is a "Competing Company" as defined within each of the Non-Compete Covenants as well as the Employee Non-Solicitation Covenants. *See* **Exhibit 2-A**.

76. Elegance intentionally and unjustifiably interfered with VPX's contractual rights

by employing Alfieri in breach of his Non-Compete Covenant and in also inducing Alfieri to breach his Employee Non-Solicitation Covenant.

77. Elegance intentionally and unjustifiably interfered with VPX's contractual rights by employing Perry in breach of his Non-Compete Covenant.

78. Elegance intentionally and unjustifiably interfered with VPX's contractual rights by employing LaRocca in breach of his Non-Compete Covenant.

79. Elegance intentionally and unjustifiably interfered with VPX's contractual rights by employing Maros in breach of her Non-Compete Covenant.

80. Elegance lacks any legal justification for its actions.

81. Unless Elegance is enjoined from continuing to interfere with VPX's contractual rights, including enjoined from continuing to employ any of the Individual Defendants, from employing any other present or former VPX employee in violation of such employee's non-compete covenant with VPX, and from continuing to induce Alfieri, or inducing any other present or former VPX employee, to solicit any other VPX employee in violation of his/her employee non-solicitation covenant with VPX, VPX will suffer irreparable injury and harm, for which there is no remedy at law to provide VPX adequate relief.  Further, each of the subject contracts, into which Individual Defendants respectively entered, expressly provides, at paragraph 7(B)(i) thereof, that VPX shall be entitled to injunctive relief for a breach or threatened breach of the Non-Compete Covenant or Employee Non-Solicitation Covenant, as more particularly set forth therein.

82. Additionally, as a result Elegance's tortious interference, VPX has suffered, and will continue to suffer, monetary harm.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS AGAINST DEFENDANT ALFIERI

83. Plaintiff reincorporates and re-alleges the allegations in paragraphs 1-44 and 47-57 hereinabove, as if set forth fully within this Count.

84. This action is for preliminary and permanent injunctive relief, as well as damages, against Defendant Alfieri.

85. At all times material hereto, valid contracts exist between VPX and each of the Individual Defendants Perry, LaRocca and Maros.

86. Elegance is a "Competing Company" as defined within each of the Non-Compete Covenants. *See* **Exhibit 2-A**.

87. At all times material hereto, Alfieri was aware that Perry, LaRocca and Maros were each bound by his/her Non-Compete Covenant with VPX.

88. Alfieri intentionally and unjustifiably interfered with VPX's contractual rights by inducing Perry to accept employment with Elegance in breach of his Non-Compete Covenant.

89. Alfieri intentionally and unjustifiably interfered with VPX's contractual rights by inducing LaRocca to accept employment with Elegance in breach of his Non-Compete Covenant.

90. Alfieri intentionally and unjustifiably interfered with VPX's contractual rights by inducing Maros to accept employment with Elegance in breach of her Non-Compete Covenant.

91. Alfieri lacks any legal justification for his actions.

92. Unless Afieri is enjoined from continuing to interfere with VPX's contractual rights, including enjoined from continuing to induce Perry, LaRocca and Maros to violate their respective Non-Compete Covenants and from inducing any other present or former VPX employee to violate his/her non-compete covenant with VPX, VPX will suffer irreparable injury and harm, for which there is no remedy at law to provide VPX adequate relief. Further, the subject contracts,

into which Perry, LaRocca and Maros respectively entered, expressly provides, at paragraph 7(B)(i) thereof, that VPX shall be entitled to injunctive relief for a breach or threatened breach of the Non-Compete Covenant, as more particularly set forth therein.

93. Additionally, as a result Alfieri's tortious interference, VPX has suffered, and will continue to suffer, monetary harm.

## Demand for Attorneys' Fees

94. The subject agreements, at paragraph 20, provide that, "[i]n the event of any litigation between the Parties . . ., the prevailing party shall be entitled to reasonable attorney's fees (including in-house counsel), paralegals', and para-professionals' fees and court costs at all trial and appellate levels." *See* **Exhibits 1-A, 1-B, 1-C and 1-D**.

95. Pursuant to such provision, VPX demands reimbursement for all such reasonable attorneys' fees and costs in connection with this action.

WHEREFORE, Plaintiff, Vital Pharmaceuticals, Inc., respectfully prays for judgment against Defendants Alfieri, Perry, LaRocca, Maros, and Elegance granting and awarding it the following: (i) Preliminary and permanent injunctive relief; (ii) Money damages; (iii) Reasonable attorneys' fees and costs pursuant to the subject agreements; (iv) all other taxable costs, disbursements, and expenses of this action; and (v) any and all other relief that this Court may deem just and appropriate.

**Dated:** July 1, 2020

Respectfully submitted,

/s/ Gregg H. Metzger
Gregg H. Metzger, Esq. (Fla. Bar No. 836850)
Chief Litigation Counsel
Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326
Phone: (786) 417-0104
gregg.metzger@vpxsports.com
service@vpxsports.com

*Counsel for Plaintiff*

Stephanie Khouri, Esq. (Fla. Bar No. 113327)
Corporate Counsel
Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326
Phone: 954-815-4022
stephanie.khouri@vpxsports.com
service@vpxsports.com

*Counsel for Plaintiff*