# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX SPORTS/REDLINE/BANG
ENERGY, a Florida corporation,

      *Plaintiff*,

v.

CHRISTOPHER ALFIERI, an individual,
ADAM PERRY, an individual, ANDREW
LAROCCA, an individual, AMY MAROS,
an individual and ELEGANCE BRANDS
INC., a Delaware corporation,

      *Defendants*.

**CASE NO: 0:20-cv-61307-AHS**

## RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION[1]

Defendants Alfieri, Perry, LaRocca, Maros, and Elegance, through undersigned counsel and pursuant to Federal Rule of Civil Procedure 65, file this Response in Opposition to VPX's Motion for Preliminary Injunction ("Motion") (DE 5), and in support state:

---

[1] Christopher Alfieri ("Alfieri"), Adam Perry ("Perry"), Andrew LaRocca ("LaRocca"), Amy Maros ("Maros") are collectively referred to as the "Individual Defendants". The Individual Defendants and Defendant Elegance Brands, Inc. ("Elegance") are collectively referred to as "Defendants". Vital Pharmaceuticals, Inc. is referred to as "VPX" or "Plaintiff".

## Introduction

The instant Motion is part of a lawsuit brought to prevent fair competition. Four veterans of the beverage industry joined Elegance, a company that sells spirits and related beverages, such as bitters, cocktails, and liqueurs. Elegance is taking steps to enter the burgeoning CBD drink market.[2] VPX, the Individual Defendants' former employer, is a beverage entity that does not sell CBD or alcoholic drinks, or any related products. However, VPX's owner, Jack Owoc, owns a completely separate entity that is also trying to break into the CBD market. None of the Individual Defendants were employed by that company. In an attempt to cut Elegance and its employees out of the CBD beverage market, VPX is relying on an all-too common tactic to stymie competition: a meritless lawsuit based on unenforceable employee restrictive covenants.

The Individual Defendants worked with VPX each for less than ten months each. They each quickly realized that VPX was not a pleasant place to work. One of these individuals, Alfieri, was fired without cause in the early stages of the COVID-19 pandemic. He was then hired by Elegance to work with its existing brands and to assist with a new product that it is attempting to bring to market: a caffeinated CBD drink. The three others, LaRocca, Perry, and Maros, resigned from VPX and ultimately joined Elegance as well. VPX then concocted a lawsuit that claims its confidential and trade secret information is in jeopardy by way of the Individual Defendants' employment with Elegance. VPX did this to retaliate against the Individual Defendants and curb Defendants' competition with a new, legally distinct CBD drink company controlled by its founder and CEO called Stoked, LLC.

---

[2] Cannabidiol ("CBD") is a chemical that can be extracted from hemp. With recent changes in applicable laws, the market for CBD has exploded.

VPX has failed to establish that it has any confidential information or trade secrets or whether such information could be used by the Individual Defendants in their new jobs to unfairly compete against it. VPX hopes that the Court will ignore the relevant law and issue an injunction based on conclusory and generic statements. But that is not the law. VPX must establish, among other things, that it has such information, that it has a legitimate business interest in protecting its information through the at-issue restrictive covenants, and that it will suffer irreparable harm if an injunction is not issued. It cannot satisfy any of its burdens. The Motion must be denied.

## I.  BACKGROUND

VPX is a performance drink and dietary supplement manufacturer and seller. DE 5 at 4. VPX offers: Bang, Redline, NOO Fuzion, Redline Noo-Fusion, and Meltdown.[3] *Id.* All these products share at least one thing in common: they are marketed as high-energy sports products designed to increase performance. *See* Dec. of Alfieri, attached as Exhibit "1" at ¶ 12. The most successful of VPX's products is the performance drink Bang. VPX attempts to differentiate its products from the energy drink market by touting itself as a healthy alternative to energy drinks like Red Bull.[4] Many retailers have adopting this terminology, refer to Bang as a "performance energy" drink, and do not place Bang alongside energy drinks such as Red Bull and Monster, but with sports drinks such as Gatorade. *Id.* at ¶ 14.

---

[3] VPX refers to NOO Fuzion, Redline Noo-Fusion, and Meltdown as "Emerging Brand drink products." DE 5 at 1. That terminology is adopted throughout this Response.

[4] VPX runs various marketing campaigns, including on social media. In connection therewith, Mr. Owoc has claimed that Bang "triggered a major paradigm shift among the performance and bodybuilding authorities and has now become the most disruptive scientific innovation in the 30-year history of Sports Nutrition!"

In the summer of 2019, VPX hired Alfieri, a Red Bull employee of over twenty years, as its Vice President of Sales and Distribution. *Id*. at ¶ 4. That fall, Alfieri helped VPX hire:

- LaRocca (a 24-year industry veteran of Red Bull and beer manufacturers) as Director of Distribution Strategy.
- Perry (a 17-year industry veteran of Red Bull and Icelandic Glacial) as Director of Distribution for the South.
- Maros (a 13-year industry veteran of Coca Cola) as Senior Supply Chain Manager.

*See* Dec. of LaRocca, attached as Exhibit "2" at ¶¶ 2, 3; Dec. of Perry, attached as Exhibit "3" at ¶¶ 2,3; Dec. of Maros, attached as Exhibit "4" at ¶¶ 2,3.

Each Individual Defendant executed an Employment Agreement that contained restrictive covenants. DE 1 at ¶¶ 18, 24, 30, 36. The Employment Agreements purport to prohibit competition with VPX for one year and solicitation of VPX's employees for the same time. *Id.* at ¶ 63. Not long into the Individual Defendants' employment with VPX, irreconcilable issues arose. On many occasions the Individual Defendants were threatened with baseless termination. *See, e.g.*, Ex. 1 at ¶ 6. VPX's founder, Jack Owoc, would routinely fire individuals, including those on Alfieri's team, without prior consultation. Ex. 1 at ¶ 5. Alfieri was asked to engage in activities that, in his opinion, were adverse to the interests of VPX. *Id*. at ¶ 15. Maros filed a formal complaint with Human Resources that went unheeded. Ex. 4 at ¶ 4.

In connection with its Spring 2020 exclusive deal with Pepsi Co. to distribute Bang, VPX terminated its relationships with all of its distributors. Ex. 1 at ¶ 16. This fundamentally changed the roles of the Alfieri, LaRocca, and Perry. *See, e.g.*, Ex. 2 at ¶ 5.  Around the same time, VPX unceremoniously terminated Alfieri without cause and without severance. Ex. 1 at ¶ 8.

The termination of Alfieri, the erratic behavior of Mr. Owoc, the toxic work environment, and the diminishment of their roles from the Pepsi Co. deal, all contributed to the remaining

Individual Defendants' decisions to leave VPX. *See, e.g.,* Ex. 2 at ¶ 5; Ex. 4 at ¶ 4.  Perry and LaRocca resigned on the same day. On LaRocca's last day, May 15, 2020, Maros also resigned. Ex. 4 at ¶4. During their VPX tenure, none of the Individual Defendants had access to any of VPX's preblended formulas or other confidential or trade secret information. Ex. 1 at ¶ 11; Ex. 2 at ¶ 4; Ex. 3 at ¶ 5; Ex. 4 at ¶ 9.

Subsequently, the Individual Defendants joined Elegance. In addition to its alcohol related products, Elegance has been working to create an entirely new subcategory of the energy drink market that focuses on hemp-based products. *Id.* at 13. Elegance's flagship CBD product is a canned CBD drink called Gorilla Hemp Energy Drink ("Gorilla Hemp"). Gorilla Hemp was developed long before the Individual Defendants joined Elegance, and they had no role in designing the Gorilla Hemp formula or can. Ex. 1 at ¶ 18; Ex. 2 at ¶ 8; Ex. 3 at ¶ 10; Ex. 4 at ¶ 7. Gorilla Hemp is not yet available for purchase.  Ex. 1 at ¶ 22.

While VPX does not have a CBD product, Mr. Owoc is affiliated with Stoked, LLC, a non-party company that developed one called Stoked. This is the only connection between Stoked, LLC and VPX. VPX does not sell Stoked on its website. None of the Individual Defendants worked for Stoked, LLC. None of the Individual Defendants had a role in developing the Stoked formula.

## II. <u>MEMORANDUM OF LAW</u>

### A.  STANDARD

A preliminary injunction is "an extraordinary and drastic remedy" governed by Federal Rule of Civil Procedure 65. *McDonald's Corp v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citations omitted); *Ferrerro v. Assoc. Material, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991) (noting federal procedural law governs issuance of preliminary injunctions). For VPX to secure a

preliminary injunction, it must establish: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*). The movant "bears the 'burden of persuasion' to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citations omitted). The failure to establish one of the elements requires denial of injunctive relief. *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001). To that end, no injunction can issue under Rule 65 unless the asserted irreparable injury is "actual and imminent," not merely remote or speculative. *Siegel*, 234 F.3d at 1176.

## B. VPX DOES NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS RESTRICTIVE COVENANT CLAIMS

Restrictive covenants are, with limited exceptions, unlawful restraints of trade. To establish a substantial likelihood of success on the merits of its claims based on restrictive covenants, VPX must (1) demonstrate that the restrictions are enforceable, (2) demonstrate that the Individual Defendants breached their respective agreements, and (3) defeat each of Defendants' affirmative defenses. *Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC*, 223 F. Supp. 3d 1221, 1226 (M.D. Fla. 2016). VPX cannot satisfy its burdens in this case.

The at-issue restrictions are enforceable only if VPX can: (1) "**plead and prove** the existence of one or more legitimate business interests justifying the restrictive covenant," and (2) prove that the contractually specified restraint is reasonably necessary to protect the established interests of the employer. Fla. Stat. § 542.335 (emphasis added); *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009); *Passalacqua v. Naviant, Inc.*, 844 So. 2d 792, 795

(Fla. 4th DCA 2003). Any restrictive covenant must be evaluated through two separate lenses. The first lens is the antitrust or restraint of trade lens.[5] The second lens is the contract lens. Lip service to the requirements laid out in Florida Statute § 542.335 is insufficient to warrant enforcement. The generic allegations in VPX's Complaint (DE 1) and Motion (DE 5) and the conclusory, self-serving statements in the accompanying declaration (DE 5-1) fall far short of those requirements.

VPX banks on this Court ignoring the anti-trust framework necessary to properly analyze restrictive covenants and rubber-stamping an injunction under basic contract principles. The Motion devotes only a single paragraph to explaining VPX's supposed "legitimate business interests." *See* DE 5 at pp. 14-15. The Motion lacks both the facts and legal support necessary to demonstrate that VPX's legitimate business interests are at issue or that such interests should be protected through such extraordinary relief sought.

### 1. VPX Failed to Articulate Any Legitimate Business Interests That Warrant Enforcement of the Restrictive Covenants Through a Preliminary Injunction

Generally, a legitimate business interest takes the form of trade secrets or other valuable confidential information, substantial customer relationships, or extraordinary training and education. *See* Fla. Stat. § 542.335; *Hapney v. Cent. Garage, Inc.*, 579 So. 2d 127, 132 (Fla. 2d DCA 1991). In a wholly conclusory manner, VPX claims to have confidential information or trade secrets that warrant enforcement of the restrictive covenants; no other legitimate business interests are alleged. *See generally* DE 1 and 5.[6] But generic statements are not enough. *See Lucky Cousins*, 223 F. Supp. 3d at 1226 (finding a party must articulate how information is unique or proprietary

---

[5] That is axiomatic. The relevant law governing non-compete agreements, Florida Statutes § 542.335, is codified within the Chapter 542 – The Florida Antitrust Act.
[6] Notably, VPX did not bring any trade secret claims against the Defendants. *See* DE 1.

and explain how a party could unfairly utilize the information to compete). Given its failure to articulate *what* its confidential information is or *how* Defendants could use such information to compete unfairly, the restrictions are illegal and unenforceable. *See* Fla. Stat. § 542.335(1)(b).

### a. VPX Does Not Have a Protectible Interest in Its Information

In order for VPX to have a legitimate business interest in its information, the information at issue must be valuable, confidential, unique to VPX, and not otherwise available to its competitors. *Anich Indus., Inc. v. Raney*, 751 So. 2d 767, 771 (Fla. 5th DCA 2000). VPX has not attempted to demonstrate that any of these factors are present. And none of them are.

As a preliminary matter, VPX failed to satisfy its pleading burden. It has not adequately described *what* allegedly confidential or trade secret information is at issue. Rather than "articulate how any activity, method or technique utilized … was unique or proprietary in any way," VPX relies entirely on the *existence* of restrictive covenants and a self-serving declaration (DE 5-1) to support the alleged existence of confidential and trade secret information. *Passalacqua*, 844 So. 2d at 796. The declaration parrots the Complaint and statutory language of Florida Statutes § 542.335. That is not enough to demonstrate the existence of a legitimate business interest, let alone a substantial likelihood of success on the merits.

Setting its pleading failures aside, VPX's position does not stand up under any scrutiny. For example, where VPX appears to describe its allegedly confidential or trade secret information in greater detail, it is merely recites industry terminology familiar to those in the beverage industry (e.g., "raw material suppliers . . . [a] list of distributors, retailers and co-packers and related contacts[]"). DE 5-1 at 32. Distributors, retailers, and analytics companies are all well known to those in the beverage industry and were well known to the Individual Defendants for years prior

to joining VPX. *See, e.g.*, Ex. 1 at ¶ 10; Ex. 2 at ¶¶ 2, 5; Ex. 3 at ¶¶ 2, 3; Ex. 4 at ¶¶ 2, 10 ,11. Those distributors, retailers, and analytics companies that the Individual Defendants were exposed to during their VPX employment were, for the most part, (a) already known to the Individual Defendants prior to joining VPX, (b) simultaneously doing business with VPX's direct competitors and (c) not otherwise exchanging confidential or trade secret information with VPX.[7] Further, VPX's techniques, practices and information do not meaningfully differ from practices utilized by all beverage sellers. *Id*. While the beverage market may be broken down into non-competitive subcategories (e.g., alcoholic vs. non-alcoholic, or performance drinks (e.g., Gatorade, Bang, and Redline) vs. energy drinks (e.g., Red Bull) vs. CBD drinks (e.g., Gorilla Hemp)), the supply and distribution chains for each category overlap and are common knowledge within the industry.[8]

Because it lacks protectible information, VPX suggests publicly available information is confidential or a trade secret. For example, much of VPX's Motion is concerned with its relationships and interactions with distributors. But a relationship with a distributor is not confidential nor was most of the information they exchanged. Even if at some point VPX exchanged confidential information with its distributors, it recently entered an exclusive and public deal with Pepsi Co. to distribute its Bang products. *See* PepsiCo Press Release, April 28, 2020, attached as Exhibit "5". In connection with that deal, VPX terminated all of its other distribution deals.[9] This means that VPX no longer has active relationships—and is no longer exchanging information—with distributors other than Pepsi Co. Ex. 1 at ¶ 16; *see also* Ex. 5. VPX has not

---

[7] VPX also mentions co-packers in its papers. Not only do direct competitors work with the same co-packers, but VPX is taking steps to cut them out of its process.

[8] Despite this overlap of distribution and supply chains, regardless of the drink being provided, it plainly does not follow that all beverages are competitive with one another.

[9] VPX and its previous distributors often publicized their relationships.

alleged that Defendants have any specific confidential information exchanged with Pepsi Co. or any other specific former distributor. That is because VPX can make no such allegation.

Even if VPX still had a litany of distribution deals in place, nothing indicates that the information exchanged would be confidential. The Individual Defendants knew market actors and industry standard practices long before joining VPX. Ex. 1 at ¶ 2; Ex. 2 at ¶ 2; Ex. 4 at ¶¶ 2, 11. This is why there was no training when the Individual Defendants joined VPX. Ex. 1 at ¶ 5.

In a similar attempt to manufacture confidential or trade secret information where none exists, VPX refers to two analytics tools: the IRI and VIP. This is where the absurdity of VPX's position is crystallized: In its sworn declaration, VPX claims that it is at risk of the Individual Defendants utilizing IRI information acquired during their time at VPX. It defines the IRI as the "International Roughness Index" in VPX's Motion. DE 5-1 at ¶ 21. This shows how little thought went into VPX's Motion (and lawsuit). The IRI at issue is not the "International Roughness Index" (a logistics tool that reflects road conditions). It is (presumably) International Resources, Inc.

The IRI and VIP ("Vermont Information Processing") tools are commonly used throughout the beverage industry and are available to any market competitor. *See* https://public.vtinfo.com ("VIP is the leading technology supplier for brewers, distributors, wineries, soda bottlers, and other companies in the beverage industry."). VIP is specifically designed to be shared along the supply chain, meaning that VPX data is available to any number of distributors and suppliers. *Id*. at https://public.vtinfo.com/for-the-industry) ("Using shared views and common tools that allow access to a single source of information, [VIP is] getting everyone on the same page for collaboration and communication among the tiers."). Information accessible to anyone with an internet connection or affiliation with the beverage industry cannot be valuable, confidential, or

unique. The remaining scope of what VPX believes is confidential or a trade secret is too vague. Because VPX has failed to adequately articulate what its confidential or trade secret information is, its Motion should be denied outright.

### b. *VPX Cannot Explain How Defendants Could Use its Purportedly Trade Secret or Confidential Information to Unfairly Compete*

Even if this Court determines that VPX possesses confidential or trade secret information and that Defendants have of such information, VPX must still prove how the Defendants could use that information to engage in unfair competition. *See Passalacqua*, 844 So. 2d at 796 (finding no legitimate interest in confidential information where plaintiff failed to articulate how its methods were unique and how defendant could use that information to gain an unfair advantage). Just as it failed to identify what the confidential information *is*, VPX has failed to articulate *how* such information could be used to unfairly compete. Several facts undercut the notion that the Defendants could use any such information to unfairly compete.

First, VPX ignores that the Individual Defendants were not privy to forward-looking projections or plans. This is why Alfieri was repeatedly caught off guard when folks he hired were terminated without his input or forewarning. Ex. 1 at ¶ 7. He had no knowledge about future VPX plans or products. It is also why LaRocca and Perry were caught off guard and afraid of losing their jobs following termination of the existing VPX distribution network, which appeared to render them unnecessary. *See, e.g.*, Ex. 2 at ¶ 5; Ex. 3 at ¶ 6.  With strategic information kept from the Individual Defendants, VPX cannot demonstrate how the information learned during the Individual Defendants' employment can allow them to engage in unfair competition now. Any information that the Individual Defendants recall from their time at VPX that potentially was confidential began growing stale and worthless the moment the Individual Defendants resigned—

which was several months ago. *S. Wine and Spirits of Am., Inc. v. Simpkins*, 2011 WL 124631, *6 (S.D. Fla. Jan. 14, 2011) (denying injunction and holding information would become "stale-and therefore not valuable-within two to six months.").

With respect to analytics, there is no allegation that any of the Individual Defendants took this information with them upon departing VPX. To the extent that VPX utilized VIP and IRI analytics, there is no basis for presuming that VPX's logistics information could be of any assistance for launching Gorilla Hemp, which uses a different business model, distributors, ingredients, and suppliers than VPX. For instance, although VPX is transitioning away from focusing on convenience stores as a primary location for selling its products, approximately 85% of Gorilla Hemp's sales likely will come from such stores. Ex. 1 at ¶ 23.

VPX further undercuts its position that the analytics pose a threat of unfair competition by stating that LaRocca received "detailed daily updates" regarding analytics. DE 5-1 at ¶ 39. LaRocca has not had access to any such information since his May 1, 2020 resignation. If the analytics change on a daily basis, VPX cannot in good faith claim that such information could be used to unfairly compete with it, even if LaRocca could remember every aspect of the analytics in detail, which he does not. *See Simpkins* at *6 (S.D. Fla. Jan. 14, 2011).

It is also not clear that VPX's information that was accessible by the Individual Defendants has any value to begin with. For example, it is VPX's position that Alfieri was fired for performance issues. *See, e.g.*, DE 5-1 ¶ 24. This means Alfieri was unable to successfully utilize VPX's information for its benefit during his eight-month employment. For his part, Alfieri states that he would never emulate any of VPX's practices that deviate from industry standards. Ex. 1 at ¶ 15. Yet now, VPX asks the Court to believe that this information Alfieri allegedly had access to

(a) was actually confidential and/or a trade secret (b) is engrained in his memory, and (c) could be used to unfairly compete. There is no factual or legal basis for VPX's position.

Notably, VPX does not allege that any of the Individual Defendants were privy to the (potentially) proprietary preblend formulas contained in VPX's various beverages. This is because it cannot. None of the Individual Defendants, including Alfieri, ever had access to such information. Ex. 1 at ¶ 11; Ex. 2 at ¶ 4; Ex. 3 at ¶ 5; Ex. 4 at ¶ 9.

VPX's few specific allegations regarding Stoked focus primarily on Maros. Specifically, VPX claims that Maros had access to the "carefully-vetted sourcing of high-quality hemp" that Stoked used "in its development, manufacture and production and launch of Stoked." DE 5-1 at ¶ 47. First, the CBD brand used by Stoked ("CannaBlast") is listed on the individual cans of Stoked and was made public no later than June of 2019. Second, cans containing CBD beverages are marked with Quick Response matrix barcodes that reveal the source and type of CBD active in the beverages. Ex. 1 at ¶ 21. Third, any suppliers or co-packers that Maros interacted with during her VPX tenure were common knowledge and known to her prior to joining VPX. Ex. 4 at ¶ 11. Fourth, none of the Individual Defendants have or had access to the preblend formulae of VPX products, Stoked, or Gorilla Hemp, nor were they involved in the developments of any of the products. *See, e.g.*, Ex. 1 at ¶¶ 11, 18, 19; Ex. 2 at ¶¶ 4, 8; Ex. 3 at ¶¶ 5, 10; Ex. 4 at ¶¶ 7, 9. Fifth, Gorilla Hemp does not utilize the same supplier of CBD or the same *type* of CBD as Stoked. Ex. 1 at ¶ 20. There is no reason to treat Stoked, LLC and VPX as one in the same. They are distinct legal entities.

### 2. VPX Failed to Establish that the Restrictive Covenants Were Breached

Even if the Court determines that VPX has a legitimate business interest, it must then find that the Individual Defendants breached the restrictive covenants. VPX cannot establish a breach

by any of the Individual Defendants. The Individual Defendants' work with Elegance's spirits and CBD related business lines is not prohibited by the terms of the their agreements. VPX's business lines do not compete with the alcohol and CBD drink sector. VPX and Defendants are not competing for shares of the same shelves or markets. There has been no breach.

VPX intentionally markets its products as performance drinks. This means that retailers frequently do not sell VPX drinks next to energy drinks, such as Red Bull or Monster. Rather, VPX's products are often placed alongside sports and fitness drinks, such as Gatorade.

But protecting Bang and other VPX products from unfair competition is not what this case is really about. As discussed above, VPX's principal operates a separate and distinct legal entity: Stoked, LLC. VPX has not attempted to explain its relationship with Stoked, LLC beyond calling it an "affiliate". *See, e.g.*, DE 5 at ¶ 40. VPX's website does not sell Stoked. The Individual Defendants did not work for Stoked, LLC. They did not have employment agreements with Stoked, LLC. And their restrictive covenants do not prevent them from competing with Stoked, LLC.

VPX takes the position that Gorilla Hemp is competitive with Bang, Redline or its Emerging Brand drink products in the hopes that this Court will sign off on an injunction that does nothing to actually protect VPX's alleged legitimate business interests. What it will do is prevent Elegance, a new market entrant in a new market—the CBD beverage business—from competing with an unrelated company controlled by the same individual as VPX.[10]

---

[10] VPX may claim that Elegance nonetheless falls into the employment agreements' definition of a "Competing Company" as it is involved in the "non-alcoholic beverage industry."  DE 1-1 at 6(ii). But that definition is facially overbroad, as it purportedly prohibits the Individual Defendants from selling anything from Coca Cola to milk.

### C. VPX DOES NOT HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON ITS TORTIOUS INTERFERENCE CLAIMS

VPX's tortious interference claims are intertwined with its claims for relief under the restrictive covenants. The restrictive covenant claims fail. *See supra* at II. B. As such, VPX's tortious interference claims also must fail. Beyond that, and as laid out more fully in Defendants' Motion to Dismiss, VPX has yet to even satisfy Rule 8, let alone establish a substantial likelihood of success on its tortious interference claims against Elegance and Alfieri. *See* DE 6 at pp. 10-11.

VPX's Motion did nothing to cure those deficiencies. VPX still has not explained how Elegance's conduct was intentional and unjustified.  There still are no allegations as to how Alfieri allegedly solicited LaRocca, Perry, or Maros. There still are no allegations describing how Gorilla Hemp is competitive with VPX in the first place. VPX has failed to demonstrate a substantial likelihood of success on the merits of its tortious interference claims.

### D. VPX CANNOT DEFEAT DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants have not yet filed their affirmative defenses as they filed a Motion to Dismiss (DE 6). Defendants will ultimately raise several affirmative defenses. To adequately show a substantial likelihood of success on the merits, VPX must defeat each affirmative defense. *See Lucky Cousins*, 223 F. Supp. 3d at 1226 (M.D. Fla. 2016) ("To succeed on the merits of their cause of action, [movant] must … defeat each of [the] affirmative defenses.") (citation omitted); Fla. Stat. § 542.335(g)(3)). Below, Defendants describe the affirmative defenses that they will raise.[11]

#### 1. VPX Cannot Overcome the Defense of Illegality

Florida law provides that a contract in which a "person is restrained from exercising a

---

[11] Defendants reserve the right to amend these defenses.

lawful profession, trade, or business of any kind, as provided by subsections (2) and (3) hereof, is to that extent valid, and all other contracts in restraint of trade are void." Fla. Stat. § 542.33. The at-issue restrictive covenants constitute unlawful restraints of trade insofar as they are not predicated upon protecting VPX's legitimate business interests. This is because (1) there is no confidential, proprietary, or trade secret information at issue, (2) any customer relationships and goodwill at issue were not and are not protectible within the meaning of Fla. Stat. § 542.335, nor did VPX raise these relationships in argument for enforcing the restrictive covenants, and (3) there are no other legitimate business interests that justify enforcement of the restrictive covenants. *See* Fla. Stat. § 542.335(2); *Passalacqua*, 844 So. 2d at 795.

### 2.   VPX Cannot Overcome the Defense of Competition Privilege

To the extent Defendants' compete(d) with VPX, they did not and do not employ improper means in doing so. Defendants' conduct did not otherwise restrain competition. Defendants' conduct was simply to advance their potentially competitive interests in the market. Any claims based on Defendants' competition fail because their conduct in that respect is entirely privileged. *See Audiology Distr., LLC v. Simmons*, 2014 WL 7672336, at *11 (M.D. Fla. 2014).

### 3.   VPX Cannot Overcome the Defense of Failure to Mitigate

VPX has not taken reasonable measures to mitigate harm flowing from the disclosure and/or use of its allegedly confidential or trade secret information. VPX routinely allows former VPX employees—including those with access to the same type of information as the Individual Defendants—to compete with it immediately after they leave. This is despite the fact that these individuals have signed restrictive covenants similar, if not identical, to those signed by the Individual Defendants. In the last year alone, VPX has allowed at least eight such individuals to

leave VPX, join entities that compete with it directly, and opted not to seek enforcement of the restrictive covenants. *See* Ex. 3-A. Further, VPX did not take reasonable measures to protect the confidentiality of its supposedly secret information as it delayed efforts to prevent Defendants' alleged competition for months after learning about it. *See, e.g.,* Ex. 1 at ¶ 12. VPX has simply not taken reasonable steps to protect itself from potential harm associated with the dissemination of the same type of information that it now claims is confidential and/or trade secrets.

### 4.   VPX Cannot Overcome the Defense of Waiver

Plaintiff waived its ability to seek relief for the disclosure of its allegedly confidential and trade secret information by its disclosure of such information to persons, including without limitation, its employees and third parties who are not subject to any confidentiality agreement or other restrictive covenants. As discussed *supra*, VPX also failed to attempt to prohibit other former employees with access to the same information as the Individual Defendants from competing against it. VPX's conduct was voluntary and intentional and constitutes a waiver. *See Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005).

### 5.   VPX Cannot Overcome the Defense of Unclean Hands

A party is not entitled to equitable relief when it comes to the court with unclean hands. *See Manhattan Med. Co. v. Wood*, 108 U.S. 218, 225 (1883) ("[H]e who seeks equity must present himself to the court with clean hands."). For example, VPX's Executive Vice President Eugene Bukovi assured Alfieri that he would not be bound by any non-compete provision in his employment agreement as a condition of his employment. Unbeknownst to Alfieri, VPX added the at-issue restrictive covenants to his employment agreement. That agreement (*see* DE 1-1) was provided to Alfieri in digital format and for him to sign digitally. It stopped only on pages where

a signature was required (which did not include pages containing restrictive covenants). Alfieri was unaware for months that he was subject to that restrictive covenant and would not have agreed to join VPX if he knew that such restrictions would be contained in his employment agreement.

### E. THERE IS NO THREAT OF IRREPARABLE HARM

The "failure to meet even one" of the elements required for a preliminary injunction is dispositive. *Wreal*, 840 F. 3d at 1248. If the Court determines that VPX has demonstrated a substantial likelihood of success on the merits of any of its claims, VPX cannot prove irreparable harm. Such failure is fatal to the Motion. *See Moon v. Med. Tech. Assocs., Inc.*, 577 F. App'x 934, 937 (11th Cir. 2014) (party seeking preliminary injunction "bears the burden of clearly establishing it will be harmed in the future by an actual and imminent injury for which adequate compensatory or other corrective relief will not be available").

VPX is not concerned with preventing irreparable harm. It is concerned with preventing ordinary competition. VPX repeatedly claims that it fears that the Individual Defendants could provide Elegance with a "head start" or "compromise VPX's [undefined] competitive position within its [undefined] product markets." There is nothing in the record to plausibly indicate that this is the case. A "head start" or an unspecified "compromise[d]" competitive position is not inherently unfair and is certainly not tantamount to irreparable harm. Any hypothetical advantage enjoyed by Elegance as a result of hiring the Individual Defendants is not unfair competition. It is also certainly not the byproduct of the Individual Defendants' brief stints at VPX.

### 1. VPX is Not Entitled to a Presumption of Irreparable Harm

VPX needs the Court to presume irreparable harm because it cannot demonstrate irreparable harm on its own. Under Florida law, a party seeking injunctive relief is entitled to a

presumption of irreparable harm only where there is a breach of a *valid* and *enforceable* restrictive covenant, not simply where there is an alleged breach of the restriction. *TransUnion Risk & Alt. Data Sols., Inc. v. MacLachlan*, 625 F. App'x 403, 406-07 (11th Cir. 2015) (holding presumption requires proof of legitimate business interest). Because VPX failed to carry that burden, it is not entitled to a presumption of irreparable harm. *See GPS Indus., LLC v. Lewis*, 691 F. Supp. 2d 1327, 1337 (M.D. Fla. 2010) (no presumption of irreparable harm where plaintiff failed to demonstrate likelihood of success in proving restrictions were enforceable).

### 2.   Any Presumption Has Been Rebutted.

Even if VPX could establish that the non-compete restrictions protect a legitimate business interest, the presumption of irreparable harm is rebuttable. *Gordon*, 576 F.3d at 1231. VPX cannot demonstrate "actual or imminent" irreparable harm. *See Siegel*, 234 F.3d at 1176; *Moon*, 577 F. App'x at 937; *TransUnion Risk & Alt. Data Sols., Inc. v. Challa*, 676 F. App'x 822, 826 (11th Cir. 2017) ("[T]hat a non-competition agreement is enforceable does not necessitate the conclusion that its breach will cause the former employer to suffer irreparable harm").

Beyond conclusory allegations stating the term "irreparable harm," VPX merely alleges fair business activities by a company with which it does not compete. *See* DE 5 at ¶ 41. Courts applying Florida law routinely deny injunctions in similar circumstances. First, as discussed *supra*, the CBD product Elegance is eventually bringing to market occupies a different market space from any of VPX's products. Second, VPX has failed to demonstrate that it possesses either confidential or trade secret information that is unique to it. *Passalacqua*, 844 So. 2d at 796. Third, setting aside that VPX has not demonstrated that such confidential information is at issue, there is no indication that Defendants used any of VPX's allegedly confidential information while at

Elegance. *See, e.g., Dyer*, 667 So. 2d at 961 (vacating non-compete portion of injunction because the employer failed to prove that the former employee was using the at-issue information); *Raney*, 751 So. 2d at 767 (Fla. 5th DCA 2000). Fourth, there is no indication that even if Defendants did or could utilize the information that VPX claims is confidential or trade secret that such use would result in unfair competition. *See Moon*, 577 F. App'x at 937 (finding movant must clearly establish "it will be harmed in the future by an actual and imminent injury for which adequate compensatory or other corrective relief will not be available."). VPX's allegations of harm are entirely speculative. VPX has been unable to articulate any specific harm it has suffered or imminently will suffer as a result of Defendants' conduct.

### 3.   VPX's Alleged Damages are Quantifiable and Not Irreparable

Where money damages can be quantified to redress a movant's injuries, irreparable harm does not exist. *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). VPX has adduced no evidence that it has suffered any harm. A preliminary injunction is therefore inappropriate. *See Anago Franchising v. CHMI*, 2009 WL 5176548, at *14 (S.D. Fla. Dec. 21, 2009) ("An alleged breach of a non-competition clause does not automatically create an inference of irreparable harm" and finding damages could be quantified).

### F.   THE HARM TO DEFENDANTS WOULD OUTWEIGH ANY INJURY TO VPX

As described above, VPX has offered no facts in support of its naked allegations. Each Defendant will suffer substantial harm if enjoined. *See MacLachlan*, 625 F. App'x at 407 (the court must consider harm to the individual in issuing an injunction to enforce restrictive covenants). An injunction would derail the careers of the Individual Defendants and allows VPX to cut Elegance from a new market that VPX is not engaged in. The balance of harms weighs in Defendants' favor.

### G.  INJUNCTIVE RELIEF DISSERVES THE PUBLIC INTEREST

Florida Statute § 542.335 reflects the will of the people: Restrictive covenants that are not reasonably necessary to protect legitimate business interests are unlawful restraints of trade and disserve the public interest. VPX is trying to stymie Defendants' fair market activities through illegal restraints of trade.

### H.  VPX SHOULD BE REQUIRED TO POST A BOND

In the event the Court issues a preliminary injunction, VPX should be required to post a bond of no less than $40 million dollars. *See* Fla. Stat. §542.335. Trial remains at a considerable distance. Elegance has been able to secure significant investment funds from third parties to develop its business, including Gorilla Hemp, well before it hired any of the Individual Defendants. Any injunction would likely prohibit Elegance from realizing a return on those investments and the time and funds that it has spent to be one of the first entrants into the CBD drink market. This says nothing on the costs placed on the Individual Defendants financially and professionally. Prior to the issuance of any injunction, Defendants request an evidentiary hearing be held to determine the proper amount of bond. The bond will vary depending on the Defendant.

### I.  EVIDENTIARY HEARING REQUESTED

Pursuant to Local Rule 7.1(b)(2), Defendants request an evidentiary hearing so that the Court may resolve the litany of hotly contested positions taken by the Parties.

### III.  <u>CONCLUSION</u>

Plaintiff has failed to satisfy Rule 65. Its Motion must be denied in its entirety.

Dated: August 10, 2020                    Respectfully submitted,

                                          By: /s/ *Christopher Prater*
                                          Christopher S. Prater
                                          Florida Bar No.: 105488
                                          cprater@pollardllc.com

                                          Jonathan Pollard
                                          Florida Bar No.: 83613
                                          jpollard@pollardllc.com

                                          Michael Boehringer
                                          Florida Bar No.: 1018486
                                          mboehringer@pollardllc.com

                                          **Pollard PLLC**
                                          100 SE 3rd Ave., Ste. 601
                                          Fort Lauderdale, Florida 33394
                                          Telephone: (954) 332-2380
                                          Fax: (866) 594-5731
                                          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via ECF to all counsel of record in this action on August 10, 2020.

                                          By: /s/ *Christopher Prater*
                                          Christopher S. Prater