UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61307-CIV-SINGHAL/VALLE

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX SPORTS / REDLINE/BANG
ENERGY, a Florida Corporation,

    Plaintiff,

v.

CHRISTOPHER ALFIERI, an individual,
ADAM PERRY, an individual, ANDREW
LaROCCA, an individual, AMY MAROS, an
individual and ELEGANCE BRANDS, INC.,
a Delaware corporation,

    Defendants.
_____/

## OPINION AND ORDER

**THIS CAUSE** is before the Court upon Defendant Amy Maros' ("Defendant" or "Maros" or "Defendant Maros") Motion for Summary Judgment, filed on February 17, 2022 (the "Motion") (DE [172]). Plaintiff ("Plaintiff" or "VPX") filed a Response and simultaneously moved for Summary Judgment on March 3, 2022 ("Response" or "Cross-Motion for Summary Judgment" or "Cross-Motion") (DE [189]). Defendant filed a Reply on March 10, 2022 ("Reply") (DE [216]). The Motion and Cross-Motion are now ripe for this Court's consideration.

### I.    BACKGROUND

This action involves several ex-employees of VPX who are alleged to have breached restrictive covenants following their departure from the company. Defendant Maros commenced employment with VPX on or around October 23, 2019, in the position of Senior Supply Chain Manager (DE [173] ¶¶ 1–2; DE [190] ¶ 1). Maros executed an at-will Employment Agreement with VPX that stated, in part, that "[a]s a condition to [her]

employment with [VPX], [Maros] shall be required to review, sign, and return to [VPX] its 'Invention, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement,' which shall be made a part of this Agreement." (DE [178-3 ¶ 11). Maros admitted that she executed the "Invention, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement" (hereinafter the "agreement" or "Maros' agreement"). (DE [178-5], at 23:21–24:5).

In her role at VPX, she had knowledge of pricing information from suppliers, including the costs of goods from specific suppliers. (DE [173] ¶ 3). While Maros did not work on the sales of energy drinks, VPX contends she attended meetings where the costs for "full goods" and specific strategies concerning prices were discussed. (DE [190] ¶ 3). In her role as Senior Supply Chain Manager, VPX claims she had significant access to VPX's contracts with third-party vendors including raw material suppliers, co-packers, shipping companies, canning companies, and wholesalers. DE [190] ¶ 7. VPX further claims she also had access to specific and detailed business plans and strategies, which included VPX's vendor cost and margin and related strategies for existing products and products in development. *Id.* VPX adds that Maros was given access to information by VPX through management level business meetings, smartsheets, and other electronic communications sent to the company and provided via secure emails. *Id.* ¶ 9. And critically, on Maros' personal thumb drive that she kept after departing VPX, VPX claims she continued to possess thousands of VPX documents, including confidential co-packing services agreements (which contained information regarding VPX product formulas), a canning company agreement, a separate confidential distributor agreement, a "process document," vendor agreements that included costs of goods, and other relevant confidential VPX materials. (DE [190] ¶ 3).

Maros resigned from VPX on May 26, 2020, and began working for Elegance Brands, a competitor of VPX, on June 1, 2020. (DE [178-10]; DE [190] ¶ 6).  However, Maros continued to be paid as a VPX employee through June 17, 2020.  During this time period—after resigning from VPX and beginning to work for Elegance Brands—VPX alleges Maros forwarded VPX materials to her personal email and maintained possession of her personal thumb drive containing thousands of VPX materials. (DE [25-30A]); DE [25-31A]; DE [25-47A]).

VPX contends that Maros' job responsibilities at Elegance involved managing the logistics of raw ingredient procurement. (DE [190] ¶ 9).  According to VPX, Maros assisted with quality control and various operational matters, managed vendor relationships, managed purchase orders, handled imports and exports, handled claims and forecasts, and managed procurement and transportation. *Id.*  Moreover, VPX adds Maros "had access to operations information related to [her] job duties such as vendors, ingredients, packaging, and copacking pricing." *Id.*

## II. **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[1] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

247–48 (1986).  An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof.  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014).  However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).  "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

## III.  **DISCUSSION**

Defendant Maros first contends that VPX has failed to prove the existence of any injury stemming from Maros' subsequent employment. *See* Motion, at 5.  Second, Maros asserts that the Eleventh Circuit decision on the preliminary injunction in this case (DE [175]) controls the disposition of VPX's claims against Maros. *Id.* at 10–13.  According to Maros, that decision conclusively established that Maros did not breach the nondisclosure and non-solicitation covenants. *Id.*  Maros adds that the decision additionally established

4

that VPX failed to prove a legitimate business interest in its customer relationships because it did not describe the identity of specific customers or show the substantiality of the relationship with those customers. *Id.*

VPX, in turn, responds that its restrictive covenants are enforceable because it has evidentiary support for its legitimate business interests. *See* Response, at 3–9. Moreover, VPX contends that it has evidentiary support of irreparable harm to justify a permanent injunction under Section 7.B(i) of Maros' agreement. *Id.* at 9–12. VPX argues Maros should be enjoined from maintaining, using, or disseminating VPX's confidential information. *Id.* VPX adds that the balance of hardships weighs in favor of VPX. *Id.* Second, VPX argues that the Eleventh Circuit decision (DE [175]) does not control the disposition of this action at this stage and is limited to the preliminary injunction that it adjudicated. *See* Response, at 13–15. Third, VPX asserts that it has suffered several types of damages because of Maros' breaches. *Id.* at 16–20.

### A. The-Law-of-the-Case Doctrine

The law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Mussacchio v. United States*, 577 U.S. 237, 244–45 (2016) (citing *Pepper v. United States*, 562 U.S. 476, 506 (2011)). This doctrine "bars consideration of only those legal issues that were actually, or by necessary implication, decided in the former proceeding." *Jackson v. State of Alabama Tenure Com'n*, 405 F.3d 1276, 1283 (11th Cir. 2005) (cleaned up). In the Eleventh Circuit's decision in this case, the court noted that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *E.g.*, *Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282, 1289 (11th Cir. 2002) (citations omitted); (DE [175]). Thus, "[c]onsequently, [a] Court's order

5

denying [a party] a preliminary injunction has not resolved [the] dispute [because] [e]vidence generated in discovery may result in a ruling in [the party's] favor at summary judgment or trial." *Central Yacht Agent, Inc. v. Virgin Island Charter Yachts*, 2008 WL 11333152, at *2 (S.D. Fla. 2008). Moreover, reliance on "factual findings at the preliminary injunction stage [is] improper at the summary judgment [stage] because findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 794 (11th Cir. 2020) (quoting *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 395 (1981)) (cleaned up).

Applied here, the Eleventh Circuit's preliminary injunction ruling did not actually decide the factual issue of whether VPX has suffered irreparable injury for the purposes of trial. And the Eleventh Circuit's decision on whether VPX had legitimate business interests justifying its restrictive covenants was made based upon the factual record and then-present arguments before the court. Since then, VPX has amended its complaint to include allegations that individual defendants breached non-disclosure covenants, discovery has occurred, and depositions have been taken. As will be discussed *infra*, the legitimate business interests that are now alleged to justify VPX's restrictive covenants include, *inter alia*, VPX's confidential business information. *See* Fla. Stat. § 542.335(1)(b). Thus, Chief Judge Pryor's well-reasoned analysis in the preliminary injunction decision, which hung its hat on rejecting VPX's single purported legitimate business interest in its customer relationships, is simply out-of-date at this point.

### B. Enforceability of the Restrictive Covenant

Under Fla. Stat. § 542.335, to enforce a restrictive covenant, a party must show (1) the covenant is in writing, (2) one or more legitimate business interests justify the

restrictive covenant, and (3) the contractually specified restraint is reasonably necessary to protect the legitimate business interest(s) justifying the restriction. Fla. Stat. § 542.335. In determining the enforceability of a restrictive covenant, a court "[s]hall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought." § 542.335(g)(1). Furthermore, "[a] court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." § 542.335(j). It is undisputed that the covenant is in writing. Accordingly, the Court will analyze (i) whether there is one or more legitimate business interests justifying the restrictive covenant, and (ii) whether the contractually specified restraint(s) is reasonably necessary to protect the legitimate business interest(s).

1. Legitimate Business Interests

Under Fla. Stat. § 542.335(1)(b), legitimate business interests that justify a restrictive covenant include (1) trade secrets, (2) valuable confidential business or professional information, (3) substantial relationships with specific prospective or existing customers, and (4) customer goodwill. Moreover, the statute "protects a plethora of protected legitimate business interests far beyond those explicitly listed in the subject statute." *White v. Mederi Caretenders Visiting Servs. Of Se. Fla., LLC*, 226 So. 3d 774, 786 (Fla. 2017). Because the "legitimate business interests listed in the statute are not exclusive," a court can "examine the particular business plans, strategies, and relationships of a company in determining whether they qualify as a business interest worthy of protection." *Infinity Home Care, L.L.C. v. Amedisys Holding, LLC*, 180 So. 3d 1060, 1065 (Fla. 4th DCA 2015). The Florida Supreme Court has defined legitimate

7

business interest as "an identifiable business asset that constitutes or represents an investment by the proponent of that restriction such that, if that asset were misappropriated by a competitor (i.e., taken without compensation), its use in competition against its former owner would be unfair competition." *White*, 226 So. 3d at 784.  Section 542.335(h) requires courts to "construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement," Fla. Stat. § 542.335(h), and a party seeking to enforce a restrictive covenant need only establish one legitimate business interest, *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1233 (11th Cir. 2009).

Here, VPX asserts that it has a legitimate business interest in its vendors, supply chain, business strategy, and product information.  According to VPX, Maros, as VPX's supply chain manager, had access to VPX's contracts with third-party vendors including raw material suppliers, co-packers, shipping companies, canning companies, and wholesalers. *See* Response, at 5.  Moreover, VPX asserts that Maros had access to specific and detailed business plans and strategies, including VPX's vendor cost information, margin information, and strategies for existing products and products in development. *Id.*  According to VPX, Maros obtained much of this information from management-level meetings, smartsheets, and internal electronic communications. *Id.* at 6.

Maros asserts in her Motion and other pleadings that Plaintiff has failed to show she possessed VPX's confidential or proprietary information. *See* Motion, at 8.  However, this assertion is at the very least a disputed question of fact.  VPX contends that, during discovery, VPX learned Maros had maintained a thumb drive with thousands of VPX documents that she took with her after her resignation from VPX. (DE [178-5], Maros Dep.

150:5-7). Moreover, VPX alleges Maros did not return this thumb drive until VPX demanded it in the course of discovery *over one year after her resignation*. (DE [190] ¶ 20). According to VPX, the thumb drive contained various co-packaging services agreements and canning company agreements with detailed information regarding products, flavors, concentration formulas, detailed ratios, and vendor instructions. (DE [188-1], Bukovi Suppl. Decl., ¶ 15). VPX further contends the thumb drive also contained pricing by ingredient and flavor, a process document containing specific customer information for specific distributors, and a process sequence and schedule that was the product of distributor negotiations. *Id.* Furthermore, VPX asserts that it learned Maros had forwarded work emails to her personal email account regarding (i) regulatory issues pertaining to co-packer procedures and (ii) an in-house "cheat sheet" containing projections and issues specific to certain products. *See* Response, at 7.

VPX contends that most, if not all, of these materials are the product of significant time and labor by the company, and disclosure of this information to competitors, especially formula information and negotiated third-party agreements, would lead to unfair competition. Moreover, VPX contends that these and other confidential materials must remain confidential in order to maintain VPX's reputation and goodwill with its third-party vendors, which is paramount to VPX. *Id.* According to VPX, Maros' conduct here is especially problematic because Elegance Brands, the company which Maros joined after leaving VPX, has products that compete with those of VPX. *See id.* at 7–8.

The Court agrees that the materials cited by VPX likely constitute valuable confidential business information—a legitimate business interest. This conclusion is especially strengthened given the Florida Supreme Court's instruction to "examine the particular business plans, strategies, and relationships of a company in determining

9

whether they qualify as a business interest worthy of protection," *Infinity Home Care*, 180 So. 3d at 1065, and to view legitimate business interests as any "identifiable business asset" that "represents an investment by the proponent" that would cause unfair competition if misappropriated by a competitor, *White*, 226 So. 3d at 784. Using basic common sense, VPX's business plans, negotiated agreements with specific third-parties, product formulas and design, business strategy, among others, all are presumably the product of VPX's invested time and labor. If a competitor such as Elegance Brands obtained any of the above, it would likely create a grossly unfair competitive advantage in a highly competitive market. A competitor could potentially short-cut the distributor and supplier contracting process, design and produce highly similar products using VPX's formulae, or undercut VPX's overall business strategy and plans. Accordingly, at the very least, there are genuine issues of material fact whether VPX's confidential business information constitutes a legitimate business interest justifying the restrictive covenant.

### 2. Contractually Specified Restraint

The Court next determines whether the contractually specified restraints are reasonably necessary to protect VPX's legitimate business interests. Maros' agreement contains several general covenants and restrictions that appear reasonably necessary to protect VPX's confidential business information. The agreement generally prohibits disclosure of confidential information and contains provisions relating to trade secrets and intellectual property. *See* (DE [76-4], at 3–4). The agreement contains a one-year non-compete that is limited to competitors of VPX and positions of the same or similar capacity that Maros held at VPX. *See id.* at 4–5.[2] Finally, the agreement contains several provisions related to breach of the foregoing, including contractual remedies of injunctive

---

[2] At this point in the litigation, the non-compete provision has expired.

relief, liquidated damages, and other remedies. *See id.* at 5–7. All these provisions appear to be tailored to VPX's concerns regarding protecting confidential business information. Therefore, the Court finds there are, at the very least, genuine issues of material fact whether the contractually specified restraints are reasonably necessary to protect VPX's legitimate business interests. Accordingly, the Court finds there are genuine issues of material fact whether VPX's restrictive covenants are enforceable.

### C. Breach of the Restrictive Covenant

The Court next analyzes whether Maros breached the restrictive covenants contained in her agreement. The facts VPX alleges suggest she breached the non-compete provision by joining a competitor in a similar role to that which she held at VPX—managing supply chain and procurement logistics. *Supra* section III.B.1; *see* (DE [190] ¶ 9). More critically, the facts VPX alleges indicate Maros breached the confidential information non-disclosure provisions by removing and maintaining confidential materials, agreements, emails, product information, etc. after she departed VPX. *Supra* section III.B.1.; *see* (DE [76-4], at 4). Accordingly, the Court finds there are, at the very least, genuine issues of material fact whether Maros breached the restrictive covenants contained in her agreement.

### D. Permanent Injunction

Fla. Stat. § 542.335(j) provides that "[a] court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions." Section 7.B(i) of the agreement provides that "in the event of any [breach of the agreement], [Maros] agrees that the Company, in addition to such other remedies which may be available, will . . . have the right to both temporary and permanent injunctive relief . . . ." (DE [76-4], at 7). "To obtain a permanent injunction, a plaintiff must

11

show (1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that a permanent injunction would not disserve the public interest." *Barrett v. Walker Cty. School Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017) (citations omitted). Fla. Stat. § 524.335(j) adds that the "violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement . . . ."

Notwithstanding the presumption of irreparable harm, VPX identifies additional facts in support. VPX alleges that Maros took voluminous confidential and proprietary documents with her from VPX and maintained possession of said materials while working for Elegance. (DE [190] ¶¶ 13, 14, 19). According to VPX, it is unclear whether Maros has fully divested herself of the VPX materials because, earlier in the litigation, she signed a sworn declaration falsely claiming that she had never obtained any of VPX's confidential information, let alone taken them with her. *See* (DE [190] ¶ 26). VPX asserts that, only after extensive discovery, was it discovered that she had possession of the thumb drive containing VPX materials. *See* Response, at 10. VPX argues that a permanent injunction is necessary to ensure that VPX is protected from Maros' continued possession of VPX materials. *Id.*

The Court agrees. The permanent injunction appears narrow in scope because it only prevents Maros from using any VPX materials she still has. To the extent Maros has no VPX materials, the injunction will be entirely irrelevant to her. It is evident and obvious that potential disclosure or use by Maros in her individual capacity or capacity as an employee of a competitor or other firm could cause irreparable injury to VPX by divulging confidential information regarding current products, products in development, vendor or distributor agreements, etc., which could resultantly cause unfair competition. Other

remedies at law are likely inadequate to prevent future use of VPX's confidential materials because money damages or other relief cannot account for potential harm done in the future—which may or may not occur if Maros later decides to use VPX materials. Moreover, the injunction would strongly disincentivize Maros to do so.

Maros relies on several cases to argue the injunction is not warranted. She argues *Austin v. Mid State Fire Equipment of Cent. Florida, Inc.*, 727 So. 2d 1097 (Fla. 5th D.C.A. 1999) supports her position that the injunction is overbroad. However, that case found an injunction overbroad because, in addition to mandating non-disclosure of the former employer's customers and pricing information, the injunction entirely prevented the individual from working for any new fire equipment company as a service technician. *Id.* at 1098. Here, VPX is only seeking to enjoin Maros from maintaining, using, or disseminating confidential and proprietary VPX materials. The one-year non-compete provision has already passed, and was itself, limited in scope. Accordingly, *Austin* is of no avail to Maros.

Similarly, Maros argues that *Passalacqua v. Naviant, Inc.*, 844 So. 2d 792 (Fla. 4th DCA 2003) supports her position that the injunction is improper. *Passalacqua* found no legitimate business interest present because the cold-calling processes at issue were generic and widely available. *Id.* at 795–97. Moreover, the defendants there did not take any proprietary or confidential information. *Id.* Here, VPX alleges that it possesses legitimate business interests and that Maros improperly took possession of VPX confidential materials. *Supra* sections III.B.1. and III.C. Thus, *Passalacqua* does not support Maros' position.

The balance of hardships appears to weigh in favor of VPX. As VPX argues, Maros pointed to no evidence as to how she would be harmed from an injunction that simply

13

prohibits her from further maintenance, use, or dissemination of VPX confidential materials. *See* Response, at 12.  VPX claims it will suffer hardship if Maros uses or discloses VPX's confidential information to competitors because this could cause unfair competition for VPX in the energy drink market. *Id.*  Additionally, the non-compete provision cannot cause any hardship to Maros because it is expired and thus would not be part of the injunction.  Therefore, the Court finds the balance of hardships likely weighs in favor of VPX.  Accordingly, the Court finds there are, at the very least, genuine issues of material fact whether a permanent injunction barring Maros from maintaining, using, or disseminating confidential VPX materials is warranted.

### E. Damages

To reiterate, Fla. Stat. § 542.335(j) provides that "[a] court shall enforce a restrictive covenant by *any appropriate and effective remedy* . . . ." (emphasis added).  Defendant Maros asserts that VPX has not proven the existence of any injury stemming from Maros' conduct after leaving VPX. *See* Motion, at 5.  VPX responds by asserting that it has in fact suffered damages because of Maros' breaches. *See* Response, at 16–20.  Specifically, VPX asserts it has incurred substantial attorney fees in bringing this action to enforce the restrictive covenant. (DE [76-4] ¶ 20).  VPX notes that these attorney fees are rewardable pursuant to the terms of Maros' agreement. *Id.*  Moreover, VPX adds that the agreement also provides for liquidated damages. *See* Response, at 17.  VPX further argues it suffered injury from paying out wages to Maros while she was working for Elegance. *Id.* at 18.  And VPX explains it is also entitled to receive back the relocation expenses it paid to Maros because she did not remain employed for a full 12 months pursuant to her employment contract. *Id.*

At this stage, the Court need only address Maros' argument that VPX has not

proven the existence of any damages stemming from Maros' conduct after leaving VPX. While it is true there is no evidence at this point that Elegance or another competitor made use of VPX's confidential materials to unfairly compete against VPX, this is not required. VPX, for one, has alleged money damages for the wages paid to Maros while she was working for Elegance.  Moreover, VPX has additionally alleged money damages for the moving expenses it paid to Maros that VPX appears entitled to under the terms of the contract.  And notwithstanding the foregoing, Florida law dictates that the "violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement . . . ." Fla. Stat. § 524.335(j).  Under Florida law, "[a] court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions." *Id.*  Thus, not only are there actual damages here, but also under Florida law, damages are automatically presumed where an enforceable restrictive covenant is violated. *Id.*  And because the statute uses "shall," this Court is required to "enforce [the] restrictive covenant by any appropriate and effective remedy . . . ." *Id.*  Therefore, there are, at the very least, genuine issues of material fact whether Plaintiff has suffered damages. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant Amy Maros' Motion for Summary Judgment (DE [172]) is **DENIED**.
2. Plaintiff VPX's Cross-Motion for Summary Judgment (DE [189]) is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 9th day of May 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF